```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5                   Plaintiff,

 6   -v-                                    Case No. 17-cr-20183-7

 7

     CHARLES THOMAS FORD, JR.,
 8
                     Defendant.
 9   _____/

10

11                        SENTENCING HEARING

12             BEFORE THE HONORABLE MARK A. GOLDSMITH

13          Detroit, Michigan, Wednesday, March 30th, 2022.

14

15   APPEARANCES:

16   FOR THE PLAINTIFF:        LISANDRA DEL CARMEN FERNANDEZ-SILBER
                               U.S. DEPARTMENT OF JUSTICE
17                             211 W. Fort Street, Room 2001
                               Detroit, MI 48226
18

19
     FOR THE DEFENDANT:        CHARLES O. LONGSTREET, II
20                             Longstreet Law Firm, PLLC
                               18917 Livernois
21                             Detroit, MI  48221

22

23
     David B. Yarbrough, CSR, RMR, FCRR
24   Official Court Reporter
     (313) 234-2619
25
```

1                        TABLE OF CONTENTS

2                                                              PAGE

3    WITNESSES:

4    NONE

5

6

7

8

9

10

11

12

13

14

15                          EXHIBITS

16   NONE

17

18

19

20

21

22

23

24

25

1          Detroit, Michigan.

2          Wednesday, March 30th, 2022.

3          At or about 2:10 p.m.

4                    --    ---    --

5          THE CLERK OF THE COURT:  The United States District

6     Court for the Eastern District of Michigan is now in session,

7     the Honorable Mark Goldsmith presiding.  The Court calls -- I'm

8     sorry, actually you can be seated.  Court calls case number

9     17-20813, defendant number seven, United States of America

10    versus Charles Ford.  Counsel, please place your appearance on

11    the record.

12         MS. FERNANDEZ-SILBER:  Good afternoon, your Honor.

13    Lisandra Fernandez-Silber and Jerome Gorgon on behalf of the

14    United States.

15         MR. LONGSTREET:  Good afternoon, your Honor.  May it

16    please this Honorable Court, Charles Oliver Longstreet the

17    Second, P68205, appearing on behalf of Mr. Charles Thomas Ford

18    who is standing to my right -- to my left, excuse me.

19         THE COURT:  Good afternoon.  Everyone can be seated

20    and I suggest you remain seated even when you're addressing the

21    Court so that you can speak directly into the microphone and

22    that will help us with being heard.

23         All right, this is the date and time set for

24    sentencing.  Is everyone ready to proceed?

25         MS. FERNANDEZ-SILBER:  Yes, your Honor.

1          MR. LONGSTREET:  Yes.

2          THE COURT:  All right.  Have the attorneys gone over

3    the presentence investigation report?

4          MS. FERNANDEZ-SILBER:  Yes, your Honor, I have.

5          MR. LONGSTREET:  The defense has as well.

6          THE COURT:  All right.  Are there any corrections or

7    additions for the report?

8          MS. FERNANDEZ-SILBER:  Not for the government.

9          MR. LONGSTREET:  Respectfully on behalf of the

10   defendant, defense continues its objections as mentioned in our

11   sentencing memorandum as to line item number 24, vulnerable

12   victims, line item 25 and line item 26 as these were items that

13   were negotiated between the United States and the defense that

14   both parties agreed to a certain guideline scoring.  We did

15   accept guideline scoring for maintaining a drug premises and

16   also, and in number -- and the amount of drugs that was

17   present, however we object to the scoring, additional scoring

18   of the probation department which scores two points for

19   vulnerable victims, two points for defendant is organizer,

20   leader or manager and scores two points for the number of

21   victims involved in the case.  These are all things that were

22   negotiated between the defense and the United States

23   government.  They were considered and not a part of the

24   guideline scoring between the parties and I object to them

25   being added to the presentence investigation report.

```
1          THE COURT:  All right.  What's the government's view
2     of this?
3          MS. FERNANDEZ-SILBER:  Your Honor, in the Rule 11
4     Plea Agreement, the parties did agree to certain enhancements,
5     however the parties did not agree as to a guideline range and
6     in our negotiations we simply agreed to disagree about certain
7     enhancements.  Of course probation makes its own determination
8     and in the PSR at the time the parties had to object to that,
9     the defendant make those objections, it was only later and the
10    government also notes that the defendant in the Rule 11 Plea
11    Agreement acknowledged that there were many women residing and
12    frequenting at the Victory Inn that were drug addicts and that
13    were victims of a sex trafficking conspiracy that was operated
14    by the same individuals that Mr. Ford bought his drugs from and
15    he also acknowledged that as a member of the drug trafficking
16    conspiracy, he was able to and did sell controlled substances
17    to these women and their commercial sex dates and that's on
18    page four and page nine of the Rule 11 Plea Agreement.  So the
19    government's position is that probation correctly scored those
20    enhancements.
21         THE COURT:  All right.  Let's -- well, let me ask
22    counsel.  There's a statement in the defense sentencing
23    memorandum that the enhancements that are in lines 23, 24, 25
24    and 26 of the report were specifically excluded by the parties,
25    but when I look at the plea agreement, I'm not seeing that
```

1    specifically.  Are you saying it's in here, counsel?

2          MR. LONGSTREET:  Actually I'm not saying it's -- not

3    enumerated --

4          THE COURT:  You can remain seated and stay close to

5    the microphone, please.

6          MR. LONGSTREET:  Very well.  That is not enumerated

7    in the --

8          THE COURT:  Not that close.

9          MR. LONGSTREET:  Very well.  It's not specifically

10   enumerated in the Rule 11 agreement.  Specifically line item

11   23, that's maintaining a drug premises.  That's something we

12   did agree to so that would be in error, however lines, 24, 25,

13   26 were just items that were discussed between myself and the

14   government.  There was at least three months of negotiation in

15   this matter to get to final resolution.  The parties and I did

16   discuss the -- excuse me, the government and I did discuss the

17   guideline range, the enhancements, the scoring, why I felt

18   those shouldn't be counted, the charge in which he was being,

19   my client was pleading to all came into factors in how we came

20   up to the negotiated number of 84 to 144 months based on what

21   we believed to be fairly dealing between the defense and the

22   government.  For the probation department to then to intercede

23   and add things to the presentence investigation report from

24   which the parties, the lawyers in the case specifically

25   discussed and then add into the presentence investigation

1    report, we have objections to.

2          Specifically supporting our argument is that my

3    client pled to a drug offense.  In our sentencing memorandum,

4    we specifically indicate that my client maintains his innocence

5    is as to human trafficking.  The victims in this specific case

6    involve, the women that are involved in human trafficking are

7    victims.  We didn't plead to a human trafficking offense.  The

8    victims in the case are associated with human trafficking, thus

9    I don't believe that my client should be responsible for

10   victims of which, one, he didn't plead to; two, maintains his

11   innocence and three, has accepted responsibility for his role

12   that he did play.

13         THE COURT:  All right.  Well, whether they should be

14   scored is a separate issue.  What you're talking about is

15   there's no basis to score them, but when I read your sentencing

16   memorandum, you were saying that there was actually an

17   agreement to exclude them.  That's what you wrote here, they

18   were specifically excluded by the parties in the negotiated

19   guideline calculation, but all a matters is the written Rule 11

20   Plea Agreement, right?

21         MR. LONGSTREET:  I would agree.

22         THE COURT:  All right.  So you're going to have to

23   point to something in this written agreement that talks about

24   how to score if you're going to make an argument based on an

25   agreement.  You might have a different argument based on

1    there's no facts in the record that would support scoring these

2    variables, frankly an argument you can make about scoring of

3    any variable in any sentencing, but I want to first address

4    this issue that you're raising in your memorandum that there

5    was an agreement.

6         MR. LONGSTREET:  I wouldn't specify specifically

7    there was an agreement, only there was a discussion between the

8    paste and those were excluded as part of our discussions in the

9    negotiations.  It is most certainly not written in the Rule 11

10   agreement.  Specifically the Rule 11 agreement says that the

11   probation department would make a determination as to what the

12   guideline scoring is.  We just make an objections based on our

13   negotiation between the government and the defense and also the

14   factual basis for which they are being applied.

15        THE COURT:  All right.  So if your argument is based

16   on an agreement, I think you've acknowledged now that it's not

17   reflected in the Rule 11 Plea Agreement.  Would you agree with

18   that?

19        THE DEFENDANT:  I would agree.

20        THE COURT:  All right.  So whether or not there was

21   some discussion, even if there was an oral agreement, that's

22   not going to be enforceable.  Every time I take a guilty plea,

23   I ask the defendant are there any agreements other than what's

24   in the written agreement between the government and the

25   defendant and that defendant would always tell me no, nothing

1    other than what's in the written agreement unless there is

2    something else that I need to know about.  Now I haven't gone

3    back over the transcript in this case with Mr. Ford, but I'd be

4    willing to bet a lot of money I asked him that question and he

5    told me there's no other agreements other than what's in this

6    written plea agreement.  Now I think therefore what we have now

7    is a question of whether there's a basis in the record to score

8    these variables, not based on an agreement, but whether there's

9    evidence to support them.

10            MR. LONGSTREET:  I would concur.

11            THE COURT:  All right.  So let's look at that then.

12            MR. LONGSTREET:  Very well.

13            THE COURT:  So 23 you now acknowledge should be

14    scored; is that right?

15            THE COURT:  Yes.

16            THE COURT:  Okay.  So let's turn to paragraph 24.

17    This has to do with victims, according to the presentence

18    investigation report, victims in this case had drug addictions

19    and were dependent on Ford for drugs, the defendant knew or

20    should have known the victim of the offense was a vulnerable

21    victim, therefore two levels are added, right?  Now that's

22    something you are objecting to, right?

23            MR. LONGSTREET:  I am, sir.

24            THE COURT:  Okay, so let's focus on that now.  Let me

25    hear the government's response to the defense argument that the

1    plea here was to drug charge, not to human trafficking charges

2    and I take it the argument of the defense is that there are no

3    victims of the drug offense to which Mr. Ford pled; is that

4    right?

5              MR. LONGSTREET:  That is correct.

6              THE COURT:  All right.  So let me hear the

7    government's response to that.

8              MS. FERNANDEZ-SILBER:  Your Honor, I would point the

9    Court to pages eight and nine of the Rule 11 Plea Agreement.

10   That's under the section titled Factual Stipulations For

11   Sentencing Purposes and on page nine, it specifically discusses

12   in the plea agreement that members of the conspiracy

13   distributed illegal narcotics to vulnerable human trafficking

14   victims at the Victory Inn.  As vulnerable victims, they were

15   unusually vulnerable due to a physical condition, mental

16   condition or particularly susceptible to the criminal conduct.

17             Specifically, members of the drug trafficking

18   conspiracy distributed controlled substances to these victims

19   who are highly addicted to cocaine or heroine, the defendant

20   Mr. Ford knew or should have known that members of a separate

21   sex trafficking conspiracy used the narcotics sold to the

22   victims to control and coerce those victims into committing

23   commercial sex acts at the Victory Inn and other locations.

24             Members of the drug trafficking conspiracy have these

25   sex trafficking victims as part the commercial sex acts sell

1    controlled substances to their clients or Johns substantially

2    increasing their profit margin and at the plea agreement or the

3    plea hearing, excuse me, the Court went over these factual

4    stipulations and the defendant specifically agreed that they

5    were accurate.

6         THE COURT:  All right.  Now give me the defense

7    response to that.

8         MR. LONGSTREET:  That is in the Rule 11 agreement,

9    however, it doesn't specifically say that my client

10   participated in the sex trafficking, only that he knew or

11   should have known that these drug, the drugs that he was

12   selling were being given to women who were using drugs.  It

13   doesn't specifically say that he participated in the human

14   trafficking, only that he knew about it or should have known

15   about it.  It doesn't say that he participated in it.

16        THE COURT:  Well, the section that the attorney for

17   the government just read starts out by saying and this is on

18   page eight the following factual stipulations include acts

19   committed, aided, abetted or willfully caused by the defendant

20   and reasonably foreseeable acts of others and then that section

21   that the government attorney just read concludes with a

22   statement the parties agree to these additional factual

23   stipulations for sentencing purposes.  So I don't quite

24   understand your argument that we can't score the variable for

25   victims.  Maybe you can explain that.  What is this doing in

1   the Rule 11 agreement that your client signed if it has nothing

2   to do with sentencing?  What does it have to do with that?

3        MR. LONGSTREET:  We entered into this particular

4   agreement with the understanding that my client would not be

5   admitting to and/or agreeing to any participation in the human

6   sex trafficking portion.  This particular paragraph only speaks

7   to his knowledge as to what was going on at the, the Victory

8   Inn, however his participation in the human trafficking, he had

9   nothing to do with so at the time that we agreed to this, it

10  was our understanding that sure, he knew there was human, there

11  was women selling their bodies at this particular hotel, but

12  his participation in forcing them to go to participate in human

13  trafficking, umm, coercing them into human trafficking, that is

14  not something that he was a part of, that is not something that

15  he admits to, only that he knew or should have known that the

16  drugs that he was using and sharing were also being used or

17  sold by other persons as part of this conspiracy and those

18  persons were committing human sex trafficking acts, not him.

19       THE COURT:  So if they wouldn't have been scored for

20  paragraph 24, 25, what would they have been scored for?  Why

21  would there be a paragraph in the Rule 11 that says the parties

22  agree to these additional factual stipulations for sentencing

23  purposes?  What sentencing purpose would this paragraph be used

24  for?

25       MR. LONGSTREET:  In this instance, it's a C plea and

1    the guidelines in the sentencing is limited.  For purposes of
2    sentencing, I don't see having any impact, but for purposes of
3    it going to the Bureau of Prisons and it being part of his
4    permanent record, I do see significance in this, these items
5    being scored.
6            THE COURT:  All right.  So your argument would apply
7    to paragraph 24, also to paragraph 25 then?  Is this right?
8            MR. LONGSTREET:  Yes, sir.
9            THE COURT:  Is there any separate or additional
10   argument for paragraph 25?  This is the one that has to do with
11   large number of vulnerable victims.
12           MR. LONGSTREET:  Again, indeed, large number of
13   vulnerable victims.  Even the Rule 11 agreement is vague in
14   regards to the number of victims.  Again, he's not admitting to
15   any parts in human trafficking.  The victims are victims of
16   human trafficking.  He didn't plea to it, he's not admitting to
17   it, he maintains his innocence to it.
18           THE COURT:  All right.  Let me ask the government
19   view on this scoring for 25, the large number of vulnerable
20   victims.  Defense says there's nothing in the Rule 11 about the
21   number of victims, so what's the basis for large number of
22   victims?
23           MS. FERNANDEZ-SILBER:  Your Honor, I would point the
24   Court to page four which is a part of the factual basis and in
25   that page, the paragraph that starts about the middle of the

```
 1    page it states as a member of the drug trafficking conspiracy,

 2    the defendant was allowed to rent rooms at the Victory Inn.

 3    The defendant sold drugs and stored them in his room at the

 4    Victory Inn.  There were also copious amounts of women who were

 5    significant drug users residing at and frequenting the Victory

 6    Inn.  Many of these women were victims of a sex trafficking

 7    conspiracy operated by the same individuals who sold drugs to

 8    the defendant.  They directed the sex trafficking victims to

 9    only purchase their drugs from members of the drug trafficking

10    conspiracy.  As a member, the defendant was able to sell

11    controlled substances to these women.

12            THE COURT:  All right.  Well, the phrase copious

13    amounts of women is probably not the best use of the English

14    language.

15            MS. FERNANDEZ-SILBER:  I would agree, your Honor.

16            THE COURT:  But what does that translate into in

17    terms of a number?  And is there anything in the record about

18    the number of women who were victimized?

19            MS. FERNANDEZ-SILBER:  I think that the record

20    indicates there were a large amount of women, but I don't know

21    that there's going to be a specific number anywhere.  I don't

22    think there is.

23            THE COURT:  Well, the variable talks about a large

24    number of vulnerable victims.

25            MS. FERNANDEZ-SILBER:  And I would just add to that
```

1   we of course provided all the discovery in the case to the

2   probation officer who reviewed that and I think upon review of

3   the discovery material, it's very clear that it is a large

4   number of women.

5          THE COURT:  Well, what was given to probation and

6   what they reviewed, I don't know anything about.  Now we're

7   here at a sentencing hearing.  Now is the time to present me

8   with what the evidence is in the record regarding the number of

9   victims.  I don't think you can even tell me that number.  I

10  think you're telling me you can't tell me that number.  We

11  don't know if it's five or 10 or 20 or 30, right?  Do we?  Do

12  you?

13         MS. FERNANDEZ-SILBER:  I don't know the specific

14  number, your Honor.

15         THE COURT:  So how would I know able to score this

16  variable as a large number if you can't even tell me how many

17  victims there were?

18         MS. FERNANDEZ-SILBER:  Your Honor, I think that it's

19  difficult to say a specific number because there were a lot of

20  them, but I can say that there are at least over 30 victims

21  identified in the government's exhibit list at this time.

22         THE COURT:  All right.  What's the defense response

23  to that?  Government says that there are 30 victims identified.

24         MR. LONGSTREET:  Well, that's for trial.  We are not

25  at trial.  At this point they haven't shown anything to suggest

1    there's 30 more victims in regards to Mr. Charles Ford and who

2    he was involved with, umm, so I have difficulty in even with

3    copious, that's still vague.  Copious also means taking

4    careful, being careful as well or being thorough so thorough

5    victim is a poor use of the English language, but it doesn't

6    tell us the number of victims.  If they have 30 victims, then

7    that's an issue for trial, but we're not at trial.  We're at

8    the sentencing phase and it's still unknown as to the number of

9    victims as part of what my client pled to.

10            THE COURT:  All right.  Well, I don't see how I can

11   make a ruling that there were a large number of victims based

12   on a government representation of how many victims there are on

13   some exhibit list or Exhibits and it's certainly nothing that

14   this defendant has agreed to, so it seems to me that there are

15   a few options.  If you want to insist on that variable, I

16   suppose we could have a hearing on how many victims there were

17   and I could make behalf finding based on how many are presented

18   to me.  Of course that's not going to happen today so we'd have

19   to adjourn the sentencing, otherwise I could not find based on

20   this record that I couldn't score the additional two points for

21   paragraph 25.  What would the government like to do?

22            Before you answer that question, maybe probation can

23   tell us what is the significance of not scoring those two

24   points.  If we scored the two points for paragraph 24, the two

25   points for paragraph 23, but not score the two points in

1    paragraph 25.  What would that do to the guidelines, if

2    anything?

3             PROBATION OFFICER FRANCE:  Your Honor --

4             THE COURT:  Tell us your name first for the record,

5    please?

6             PROBATION OFFICER FRANCE:  Lisa France, U.S.

7    probation.  I just wanted to clarify also my original report, I

8    include the role enhancement which he's objecting to and I

9    removed that in the addendum phase, so in my new report he did

10   not get the two points so he keeps referring to paragraph 26,

11   but I did not include that in the final report, so I just

12   wanted to make that clear as well.

13            THE COURT:  Thank you.

14            PROBATION OFFICER FRANCE:  So if you took away those

15   two points, it would be 168 to 210 would be the guidelines.

16            THE COURT:  168 to 210?

17            PROBATION OFFICER FRANCE:  Yep.

18            THE COURT:  All right.  Now let me hear from the

19   government, what would it like to do?

20            MS. FERNANDEZ-SILBER:  Your Honor, we would like to

21   proceed with the sentencing just given that even with the lower

22   guideline range, it's still higher than what the government is

23   recommending in this case.

24            THE COURT:  All right.  I'm ready to rule unless

25   there's anything else from the defense?

1           MR. LONGSTREET:  Nothing from the defense, thank you.

2           THE COURT:  All right.  So with respect to these

3    challenges, paragraph 23 of the presentence investigation

4    report does accurately reflect the agreement in the Rule 11

5    Plea Agreement regarding maintaining premises.  That scoring

6    was agreed to, so 23's recitation of two points will be

7    sustained.

8           With respect to paragraph 24 that the victims in this

9    case had drug addictions and where defendant fund Mr. Ford for

10   drugs and that he knew or should have known that the victims of

11   the offense were vulnerable victims, I am going to score the

12   two points for that.  I'm doing that because although there

13   were distinct conspiracies and this defendant only pled to the

14   drug conspiracy, not the human trafficking conspiracy, the

15   conspiracies are interrelated and the victims were victimized

16   in two senses.  One was in terms of the human trafficking, but

17   also in terms of the drug trafficking to which this defendant

18   pled guilty.

19          The drugs were used to control and coerce the victims

20   into committing commercial sex acts.  That's what this

21   defendant acknowledged in the Rule 11 Plea Agreement.  He did

22   not plead guilty to a human trafficking or sex trafficking

23   conspiracy, but he acknowledged the interrelationship between

24   the drugs and the sex trafficking activity so I think the only

25   reasonable interpretation of the factual stipulation that

1   appears on page nine of the Rule 11 is that Mr. Ford

2   acknowledged that his drug trafficking activity contributed to

3   the victimization of these women and that they were vulnerable

4   because they were drug addicts and therefore it's proper to

5   score the to points for paragraph 24.

6          With respect to paragraph 25, I am not going to score

7   the two points there.  I do sustain the defense to be paragraph

8   25.  The government is unable to show anything in the Rule 11

9   Plea Agreement or otherwise in the record where Mr. Ford

10  acknowledged how many victims were victimized and the

11  government's proposed substantiation of 30 victims based on

12  what might appear in Exhibits or on an exhibit list isn't

13  anything that would be binding on Mr. Ford and the government

14  is, has stated here that it doesn't want to adjourn this

15  hearing to mass and then produce to the Court evidence of the

16  number of victims so I'm not going to score the to points for

17  paragraph 25.

18         Probation has already clarified that there is no

19  scoring for role in the offense, paragraph 26, which was

20  another objection set out by the defense in its sentencing

21  memorandum.  All right, so any other objections?

22         MR. LONGSTREET:  None from the defense.  Thank you.

23         THE COURT:  All right.  Now I just want to clarify

24  you did go over the presentence investigation report with Mr.

25  Ford, correct?

1    MR. LONGSTREET:  I did go over the presentence

2    investigation report.  Other than the objections that have been

3    stated there are no other corrections, additions or deletions

4    to be made to the presentence investigation report.

5    THE COURT:  Okay.  So let's simply recite on the

6    record again that Mr. Ford did plead guilty to count one of the

7    third superseding information under a Rule 11 Plea Agreement.

8    The Court accepted the guilty plea, took the Rule 11 Plea

9    Agreement under advisement.  Are both sides still urging the

10   Court to adopt it?

11   MS. FERNANDEZ-SILBER:  Yes, your Honor.

12   MR. LONGSTREET:  Yes.

13   THE COURT:  I do adopt it and now we can turn to the

14   calculation of the guidelines.  We've been discussing how to

15   score certain variables, but let's do the calculation.  The

16   report utilized the November 1, 2021 guidelines manual.  Base

17   offense level of 32, add two levels for maintaining premises

18   for purposes of manufacturing and distributing a controlled

19   substance.  I've added two levels because the victims in the

20   case had drug addictions and were dependent on Mr. Ford for

21   drugs and Mr. Ford knew or should have known that these victims

22   were vulnerable.  As I've ruled, I'm not scoring the two levels

23   that appear in the report on paragraph 25 for large number of

24   vulnerable victims, so with a deduction of three levels for

25   acceptance of responsibility, I believe that makes the total

1    offense level 33.  Is everyone in agreement with that based on

2    my rulings?

3           MS. FERNANDEZ-SILBER:  Yes, your Honor.

4           MR. LONGSTREET:  Defense agrees.

5           THE COURT:  Let's turn to the scoring of criminal

6    history.  The report says that Mr. Ford has four points for

7    prior convictions.  Two points are added because he committed

8    the instant offense while under a criminal justice sentence.

9    That yields six points placing him in category three.  Is

10   everyone in agreement with that?

11          MS. FERNANDEZ-SILBER:  Yes, your Honor.

12          MR. LONGSTREET:  I'm sorry, can the Court repeat

13   that, please?

14          THE COURT:  He has four points for prior convictions,

15   two points for having committed the instant offense while under

16   a criminal justice sentence and the six points puts him in

17   category three.  Do you agree with that?

18          MR. LONGSTREET:  Now that I think about it, the Court

19   has read that he was under a sentence at the time of the

20   instant offense?  He was not.

21          THE COURT:  All right.  I'm looking at paragraph 53.

22   Do you have an objection to that then?  Paragraph 53 says he

23   committed this offense while he was under a criminal justice

24   sentence out of the Third Circuit Court for possession of less

25   than 25 grams and also possession of paraphernalia out of the

1   19th district court.  Do you object to that?

2          MR. LONGSTREET:  Your Honor, the reason why I

3   would --

4          THE COURT:  You can remain seated, counsel.

5          MR. LONGSTREET:  Thank you.  Now that I'm paying more

6   attention to it now that I see it, this is the case he was

7   arrested for.  This is the case that got the whole ball rolling

8   so to say.  Umm, because this is the matter that got the whole

9   ball rolling, he wasn't under the supervision of a court at the

10  time the instant offense was committed.  He had been arrested

11  even before the raid happened, even before any of this was

12  really discovered so he would not have been under supervision

13  of the criminal courts because he didn't become under the

14  supervision of the criminal courts some time I do believe until

15  December of 2016 where he pled in front of Judge Deborah Thomas

16  of the Third Circuit Court to possession of, to possession of

17  narcotics and he was serving time in the Wayne County Jail at

18  the time that this, this raid happened on January I believe

19  17th of of 2017 when the entire Victory Inn case was

20  discovered.  So technically he would not have been under

21  supervision of the Third Circuit Court at the time.

22         THE COURT:  Well, the events of the instant case have

23  to do with crimes that took place in 2017 and he was under the

24  Third Circuit Court's probation sentence until August 31 of

25  2018.

1      MR. LONGSTREET:  Respectfully, he was on probation

2  for the 2016 case at the time he was indicted on this case in

3  front of the Court.  He had pled to the probation -- to the

4  drug offense, he was serving a jail sentence at the time that

5  he was actually indicted on this.

6      THE COURT:  All right.  So what's the government's

7  response to this?

8      MS. FERNANDEZ-SILBER:  The government's position is

9  that Mr. Ford was under two criminal justice sentences when

10  these offenses -- when this offense was committed and that's

11  the one the Court pointed out for the Third Circuit Court for

12  possession less than 25 grams and also the one in 19th District

13  Court for possession of paraphernalia, umm, because these

14  offenses were taking place from 2015 to January of 2017, so he

15  would have been under a criminal justice sentence.

16      THE COURT:  When you say these, you mean the crimes

17  he committed in this case for which he's convicted in this

18  Court?

19      MS. FERNANDEZ-SILBER:  Yes, the conspiracy to

20  distribute controlled substances.

21      THE COURT:  What's the time frame?

22      MS. FERNANDEZ-SILBER:  From on or about 2015

23  continuing through on or about January 12th of 2017.

24      THE COURT:  All right.  Well, I'm looking at

25  paragraph 51 and it says that Mr. Ford was sentenced on

1    December 22 of 2016 to the six month custody and two years

2    probation, so doesn't that mean if the indictment span runs

3    into January of 2017, that he was under a criminal justice

4    sentence for the Third Circuit Court during the same time as he

5    was committing this offense?

6              MR. LONGSTREET:  The accusation is that the

7    conspiracy occurred between the dates, an unknown date in 2015

8    through January 17th, 2017 when the federal agents and local

9    agents raided the Victory Inn, however at the time that the

10   raid occurred, at the time that he was indicted, at the time

11   that the conspiracy was discovered by the federal agents, Mr.

12   Ford was not on the scene.  Mr. Ford was incarcerated.  Mr.

13   Ford was serving a sentence in the Wayne County Jail.

14   Therefore it would be the position of the defense that he could

15   not have been committing the crimes while under supervision of

16   the Circuit Court when the crimes that were being committed

17   wasn't even discovered until well after he was off the scene.

18             THE COURT:  Well, it doesn't make a difference when

19   the crime is discovered, right?  Just makes a difference

20   whether he committed the instant offense while he was under

21   sentence of another court, right?

22             MR. LONGSTREET:  Factually it does make a difference

23   to us in that there is no evidence that he was participating in

24   drug -- I mean in the conspiracy in 2015, umm --

25             THE COURT:  Well, it says right in the Rule 11 on

1    page three, from in or around 2015 through November 12 of 2016.

2        MR. LONGSTREET:  There was something going on at the

3    Victory Inn, we would agree with that.  There was a lot going

4    on at the Victory Inn.

5        THE COURT:  Well, page five at the very end of the

6    factual basis says that the defendant knew, should have known

7    or it was reasonably foreseeable to him that collectively from

8    in or around 2015 through November 12, 2016 the defendant and

9    his co-conspirators distributed at least 840 grams of cocaine

10   base, at least 100 grams of heroin.  So that does meet the time

11   frame that Mr. Ford has agreed to that he was committing the

12   crime, the instant offense, right?

13       MR. LONGSTREET:  I would imagine that being in the

14   Rule 11 and that's something we agreed to, that would nullify

15   our objection to line 53.

16       THE COURT:  All right.  So you have no objection to

17   scoring the additional two points?

18       MR. LONGSTREET:  I cannot given that it's in the Rule

19   11 agreement.  I can't.

20       THE COURT:  All right.  Anything else for the

21   government?

22       MR. LONGSTREET:  No -- excuse me.

23       THE COURT:  I'm sorry, for the government.  Anything

24   else?

25       MS. FERNANDEZ-SILBER:  No, your Honor.

1    THE COURT:  All right.  Let me clarify with

2    probation.  Regarding the paragraph 50 in the report, it talks

3    about the possession of paraphernalia out of the 19th District

4    Court.  Was the sentence there imposed on July 26th of 2017?

5    PROBATION OFFICER FRANCE:  Yes, your Honor, but also

6    for criminal history purposes, we use the date in the

7    third-superseding information which says the offense occurred

8    from on or about 2015 and continuing on, continuing through on

9    or about November 12th, 2017, so that's typically the date

10   range we use because that's the date the offense was occurring,

11   but I'd also like to point out that he already has the four

12   points so even if you took the two points away, he'd be in the

13   same criminal history category of three, but our position is

14   that he deserves those two points for being under a sentence.

15   THE COURT:  I guess what I'd like some clarity about

16   is it looks like in the two state cases, 19th District and the

17   Third Circuit Court he wasn't under a sentence until July 26th

18   of 2017; is that right?

19   PROBATION OFFICER FRANCE:  That's correct.  As of

20   that date falls in between the 2015 to November 12th, 2017

21   which is listed in the third-superseding information which is

22   he pled guilty to count one of the third-superseding

23   information.

24   THE COURT:  So you're saying the third-superseding

25   information talks about 2017?

1    PROBATION OFFICER FRANCE:  Yes, that it occurred from

2    2015 continuing on to on or about November 12th, 2017.

3    THE COURT:  Well, the problem is that the Rule 11

4    talks about 2016, not 2017, right?  It says that the defendant

5    was engaged in this from in or around 2015 through November 12

6    of 2016.  You're saying the third-superseding actually extends

7    the time frame; is that right?

8    PROBATION OFFICER FRANCE:  That's how my report's

9    written.  That's what I thought.  I don't have the

10   third-superseding information with me, but that's what's listed

11   in paragraph six of my report.

12   MR. LONGSTREET:  May I proceed some clarification to

13   the Court?

14   THE COURT:  Yes, please.

15   MR. LONGSTREET:  It appears on page one of five of

16   the third-superseding indictment, the first paragraph says on

17   or about 2015 and continuing through on or about November 12th,

18   2017.  That's a factual impossibility as all the members of the

19   conspiracy had been indicted by November, 2017.  The November

20   12th, 2016 is the date my client got arrested by the Dearborn

21   police.  This November 2017 date that appears is in our

22   estimation a typo.  The actual factual basis would be an

23   unknown date of 2015 through January 17th, 2017 when the

24   Victory Inn was raided by the FB -- by the federal agents.

25   THE COURT:  Well, I'm going by what is in the factual

1  basis in the Rule 11.

2          MR. LONGSTREET:  Okay.

3          THE COURT:  And it says it's from in or around 2015

4  through November 12th of 2016.

5          MR. LONGSTREET:  I agree with that.

6          THE COURT:  That's different than what is may the

7  third-superseding information because the third-superseding

8  information says from on or about 2015 and continuing through

9  on or about November 12, 2017.

10         MR. LONGSTREET:  The '17 being a typo.  Should be

11  '16.

12         THE COURT:  All right.  So if we go with 2016 as the

13  end point of his conduct in this case, that seems to predate

14  when he was sentenced in the state cases 'cause he was

15  sentenced July 26th of 2017.  You're saying though it doesn't

16  make a difference.

17         PROBATION OFFICER FRANCE:  It does not make a

18  difference in the criminal history category.  He's a three

19  regardless.

20         THE COURT:  All right.  I'll give the government one

21  last shot to explain to me why we would be scoring this then

22  given what is in the factual basis in the Rule 11.

23         MS. FERNANDEZ-SILBER:  Upon looking at it again, your

24  Honor, I think the Court is right that November 12, 2016 was

25  the date of the arrest of Mr. Ford and that and I don't think

```
 1    he would have been under that sentence, so I don't think that
 2    those two points should be scored.
 3              THE COURT:  All right.  So the criminal history then
 4    is four points, not six points, but he still is in category
 5    three.
 6              PROBATION OFFICER FRANCE:  Correct.
 7              THE COURT:  All right.  Everyone in agreement with
 8    that?
 9              MR. LONGSTREET:  Yes.
10              THE COURT:  All right.
11              MS. FERNANDEZ-SILBER:  Yes, your Honor.
12              THE COURT:  And with a total offense level of 33 and
13    a criminal history category of three, the guideline range is
14    168 to 210.  Everyone in agreement with that?
15              MS. FERNANDEZ-SILBER:  Yes, your Honor.
16              MR. LONGSTREET:  Yes.
17              THE COURT:  All right.  Let's look at our sentencing
18    options.  Maximum term of imprisonment is 20 years.  Guideline
19    range is 168 to 210.  The Rule 11 Plea Agreement provides that
20    the defendant's sentence shall not be more than 144 months and
21    not less than 84 months.
22              With respect to supervised release, statute provides
23    for a mandatory three years.  Is that right?
24              MR. LONGSTREET:  At least three years.
25              THE COURT:  Is it three years to life?  Is it three
```

1   years to life; is that right?

2        MS. FERNANDEZ-SILBER:  Not less than three years and

3   up to life, that's correct.

4        THE COURT:  All right and guidelines require at least

5   three years for supervised release.  With respect to probation

6   the statute makes Mr. Ford eligible for not less than one year

7   nor more than five years of probation.  He is not eligible

8   however under the guidelines.

9        Under the statute, maximum fine is one million

10  dollars.  There's mandatory special assessment of 100 dollars.

11  Guideline fine range, does that change now or is it still

12  40,000 to a million dollars?

13       PROBATION OFFICER FRANCE:  I believe it's still

14  40,000 to a million.

15       THE COURT:  Okay.  All right, restitution is not

16  applicable.  Is everyone this agreement with that recitation of

17  our sentencing options?

18       MR. LONGSTREET:  Defense agrees.

19       MS. FERNANDEZ-SILBER:  Yes, your Honor.

20       THE COURT:  All right.  I'll hear from defense

21  counsel and then Mr. Ford when your attorney's done speaking,

22  you can address the Court yourself if you like.  We'll hear

23  from the attorney for the government.  All right, go ahead,

24  counsel.

25       MR. LONGSTREET:  By way of allocution on behalf of

1    Mr. Charles Thomas Ford, the defense has done its best to

2    express our thoughts and feelings about the case and about

3    Mr. Ford in our sentencing memorandum, but I'm going to keep

4    my words short because I believe the most important sentencing

5    factor under 3553 is the person and my client will speak to the

6    Court himself to give the Court a good idea of who Mr. Charles

7    Thomas Ford the man is five years after his emancipation.

8         I will like to say that this case for Mr. Ford is

9    about repentance and redemption, repentance, understanding that

10   the conduct he engaged himself in was wrong.  He's taken

11   responsibility for it, he's taken a plea for it.  Now Mr. Ford

12   is looking for redemption, the opportunity to move forward with

13   his life.

14        Being a drug addict for a long period of time and

15   being off of it for five years provides a man a bit of clarity.

16   It provides a bit of when they say looking back is 20/20

17   vision, well, for a drug addict it's X-ray vision because it

18   allows to you look deeper into yourself, that you've made

19   decisions that you ordinarily would not have made given that if

20   were you not under the slavery of drug addiction.  Thoughts are

21   different, actions are different, spirit is different, behavior

22   is different.

23        Now that he's been clean for five years, you're

24   looking at a person who would not make the same decisions that

25   he made five years ago.  You're looking at a person who's

1    thinking differently, not that he was a bad person in the first

2    place, he was a drug addict.  He behaved like a drug addict.

3    He did drug addict things and he has admitted to his wrong and

4    he's ready to move forward.  He's looking for a new day.  He's

5    looking to get out and be back with his family, back to

6    Thanksgiving dinners and Christmases and having holidays with

7    his family versus being in a drug-induced state.

8           Mr. Charles Thomas Ford has dreams, goals that he

9    wants to accomplish once he gets out and hoping that he doesn't

10   have to spend a significant more amount of time in prison.

11   He's looking for forgiveness from the Court and he's looking

12   for a second chance and a chance to come back, come back better

13   than he's ever been before and he's hoping that he's not going

14   to be spending a significant amount of time.  He feels like

15   he's ready, he's ready to return to society with with a new

16   attitude, a new hope and new dreams and he's ready to go,

17   Judge.  Thank you.

18          THE COURT:  All right.  Thank you.  Mr. Ford,

19   anything you'd like to he will me regarding sentencing?

20          THE DEFENDANT:  Yes, your Honor.  Can you hear me?

21          THE COURT:  I can.

22          THE DEFENDANT:  I will first like to apologize to

23   you, your Honor, for taking the Court's time up, the

24   government, my family and the community for my part that I

25   played in this conspiracy.  My addiction had the best of me and

1    at the time, this disease had a strong hold.  I was truly lost

2    and needed help desperately.  I was walking around with my eyes

3    wide shut, missing the best parts of my life such as

4    communication, spending time with my family and true friends;

5    worship and things that make life so wonderful, but God, my

6    Father heard my cry, desperate and lost, looking for a way out.

7            Now, this disease had mentally, emotionally,

8    spiritually and I caught a drug case from this date and I

9    quickly asked Judge Thomas for help and she gave me 90 days in

10   jail and 90 days in the rehab.  It was then that my life

11   started to change and I could start seeing the forest for the

12   trees.

13           Then came the indictment.  I felt as if my life was

14   turned upside down, but God was still working with me.  For the

15   next five years, I had a running start to get Charles together,

16   spiritually, emotionally, mentally and physically.  I took

17   classes in jail such as drug and alcohol, alcohol PTSD, skills

18   for effective living, anger management and Bible class which I

19   taught some of the times myself.  God knew just what I needed,

20   taking these classes along with lots of prayer from family and

21   friends and even from my lawyer.

22           THE COURT:  All right, Mr. Ford, pardon me.  I'm

23   going to ask you to keep your mask up.

24           THE DEFENDANT:  Oh, okay.

25           THE COURT:  I think I'll be able to hear you.

1          THE DEFENDANT:  You can hear me?  Okay, I'm sorry,

2     sir.

3          THE COURT:  Keep it above your nose, please.  Thank

4     you.

5          THE DEFENDANT:  I felt my life coming together.  My

6     family started noticing the drastic change in my behavior, my

7     speech.  I wasn't thinking about being part of the problem, I

8     was working on being the solution to the situation.

9     Remembering how much I enjoyed life without drugs and partying.

10    I started mentoring in jail to young people letting them know

11    the damaging effects of drugs and how it breaks our spirit.

12         Now today five years later, I'm not the same person.

13    I have things to offer society such as 30 years worth of

14    managerial positions from running the family business.  I have

15    eight certificates from food tech classes that I took.  I have

16    asbestos, led and hazard law license, drug driving license and

17    a host of other things that I'm very good at like hanging

18    drywall, maintenance on houses.  I even went to MCI to be an

19    auto mechanic.

20         If given the chance, your Honor, I would really love

21    to show myself, my family and the courts that I am somebody

22    worth saving and I have something to offer.  I admit five years

23    did great for me, but now I feel it's time to show that I am

24    the solution and not the problem anymore.  So whatever it

25    takes, I'm ready and willing to do.  It took five years of my

1    being to get back my entire life and that, I am truly grateful

2    to you for, your Honor.

3             THE COURT:  All right, thank you.

4             THE DEFENDANT:  Thank you.

5             THE COURT:  Anything for the government?

6             MS. FERNANDEZ-SILBER:  Thank you, your Honor.  As a

7    member of this drug trafficking conspiracy, Mr. Ford was able

8    to and did sell a very large quantity of controlled substances,

9    primarily crack cocaine, to many vulnerable human trafficking

10   victims and to their commercial sex dates who stayed at the

11   Victory Inn and the nature and circumstances of Mr. Ford's

12   offense call for a sentence of 144 months which is what the

13   government is recommending in this case.

14            This was a drug trafficking conspiracy of impressive

15   scale.  During the short period of time that federal agents

16   were conducting surveillance, they observed hundreds of

17   suspected drug transactions and they then recovered extensive

18   evidence of drug use and distribution during the execution of

19   the search warrant at the Victory Inn.

20            Mr. Ford controlled rooms at the Victory Inn and he

21   used them to distribute crack to many human trafficking victims

22   which led the victims to then engage in commercial sex acts so

23   that they could continue to obtain those controlled substances

24   from Mr. Ford and his co-conspirators in order to maintain

25   their dependence on these drugs and this exploitation was

1    highly profitable to Mr. Ford and to his co-conspirators and

2    they turned the Victory Inn into a well-known one-stop shop for

3    drugs and commercial sex all day, every day.

4            Mr. Ford's criminal conduct at the Victory Inn went

5    on from at least 2015 to November 12th of 2016 and that's when

6    he was arrested with crack cocaine packaged for distribution in

7    his pocket.  Mr. Ford's history and characteristics also

8    support a sentence of 144 months.  He has no legitimate

9    employment history, he has at least five felony convictions

10   including for controlled substances and firearms and he's

11   violated parole and probation multiple times as is detailed in

12   the PSR.

13           In the government's view, a sentence of 144 months

14   would also reflect the seriousness of the offense, promote

15   respect for the law and provide just punishment.  Mr. Ford saw

16   the vulnerabilities of drug-addicted women and then he made a

17   conscious decision to exploit them over and over again for his

18   own financial gain for at least a year.

19           According to victim one, many victims engaged in

20   commercial sex dates for Mr. Ford and would owe Mr. Ford money.

21   According to another witness, Mr. Ford would rent his room out

22   to girls for commercial sex dates, take all the proceeds from

23   the dates as payment for drugs and the rooms and force the

24   girls to go back to work doing more dates so they could repay

25   their drug debt to him and buy more drugs from him and

1    according to a co-conspirator, Mr. Ford would buy drugs, sell

2    drugs and pimp out girls.

3           A significant sentence is necessary to deter Mr. Ford

4    and others from engaging in this conduct in the future and to

5    protect the public given that prior probationary and custodial

6    sentences have not stopped Mr. Ford from continuing to threaten

7    the public through drug trafficking.  Thank you, your Honor.

8           THE COURT:  The Court must follow the requirements of

9    the statute that governs sentencing, that's Title 18 United

10   States Code, Section 3553.  That statute requires a Court to

11   impose a sentence that is sufficient, but not greater than

12   necessary to achieve the purposes that are set out in the

13   statute.  Those purposes are for a sentence to reflect the

14   seriousness of the offense, promote respect for the law,

15   provide just punishment for the offense, afford adequate

16   deterrence to criminal conduct, protect the public from further

17   crimes of the defendant, provide the defendant with needed

18   educational or vocational training, medical care or other

19   correctional treatment in the most effective manner.

20          The statute requires a Court to consider all

21   appropriate factors including the nature and circumstances of

22   the offense, the history and characteristics of the defendant,

23   the kinds of sentences that are available, sentencing guideline

24   range, pertinent policy statements of the Sentencing

25   Commission, the need to avoid unwarranted sentence disparities

1       among defendants with similar records who have been found

2       guilty of similar conduct and the need to provide restitution

3       where that's applicable.  The Court takes into account all of

4       those factors in fashioning a sentence that it believes will be

5       sufficient, but not greater than necessary to accomplish the

6       statute's sentencing goals.

7               In terms of the seriousness of the offense, there's

8       no question that drug trafficking is a great plague in our

9       society.  Drugs kill people, they hurt people, they hurt

10      communities.  They destabilize our sense of security.  Drugs

11      are a terrible misfortune and that is why our country punishes

12      illegal drug activity as severely as it does.  Mr. Ford has

13      been part of that grievous activity that undermines the sense

14      of safety and basic welfare in our communities.

15              The specific context of this crime shows an

16      intersection with another terrible plague in our society, that

17      of human trafficking.  Mr. Ford is not before the Court for

18      sentencing for that crime.  Others have been charged and are

19      subject to proceedings in this case regarding human

20      trafficking, but there is a connection and the Rule 11 Plea

21      Agreement that Mr. Ford signed recognizes that connection.

22      These drugs were not distributed in some kind of vacuum, they

23      were distributed with awareness by Mr. Ford and others that

24      they were a means of enslaving women into performing commercial

25      sex acts and the Rule 11 Plea Agreement recognizes that very

1    connection.  So the conduct that brings Mr. Ford to court today

2    is conduct that is reprehensible and requires a very strong

3    judicial response.

4            Unfortunately, this is not Mr. Ford's first contact

5    with the criminal justice system.  The presentence

6    investigation report lists the prior convictions and they range

7    from possession of drugs to inciting or aiding, abetting

8    burning to illegal possession of firearms receiving and

9    concealing stolen property, other drug offenses, a variety of

10   driving offenses and that brings us to the current offense for

11   which he is to be sentenced today.

12           We spent a good deal of time considering the

13   sentencing guidelines which this Court does take into account.

14   That guideline range of 168 months to 210 months shows how

15   seriously the guideline calculation considers the variables

16   applicable to Mr. Ford's case.  Mr. Ford is fortunate in that

17   he executed a Rule 11 Plea Agreement that caps his sentence

18   below the guidelines at 144 months.  The defense seeks a lower

19   sentence than that pointing out that Mr. Ford has been and will

20   continue to wrestle with the demon of drug addiction.  He's

21   been a drug addict.  He claims he now understands the

22   counter-productive result of engaging in those kinds of

23   activities.  He says he's back on the right side of life and

24   the law, spending more time with his family or trying to spend

25   more time with his family or recognizing the importance of

1    family.  All of those impulses are of course very good

2    impulses.  Defense speaks of redemption and the Court certainly

3    believes that defendants who have committed crimes are

4    redeemable.

5         At the same time, the Court has to fashion a sentence

6    based on facts and not hope.  It certainly is the Court's hope

7    that Mr. Ford can turn the corner on a life that for the most

8    part has found him in courtrooms and in jails and prison, but

9    what is before the Court right now is a defendant who has

10   committed a terrible crime, contributed in a significant way to

11   the misery of others.  Such a defendant needs to be subject to

12   a custodial sentence for a significant period of time, to

13   protect the public from further crimes of the defendant, deter

14   others who would imitate his conduct, vindicate the law that

15   has been violated here.

16        Ultimately, the Court's sentence has to constitute

17   just punishment.  The Court does believe that a sentence of 144

18   months will be sufficient and not greater than necessary to

19   accomplish those goals.  The Court does understand that it is

20   departing from a guidelines or varying from the guidelines.  It

21   is doing so because the parties have agreed to cap the sentence

22   below the guidelines and the Court does believe taking into

23   account all the circumstances appropriate within the statute

24   that a sentence after 144 months will be sufficient, but not

25   greater than necessary to accomplish the statutes's sentencing

```
 1   goals.

 2              Therefore pursuant to the Sentencing Reform Act of

 3   1984, considering the sentencing guidelines which are advisory

 4   and not mandatory, have been having taken into account all the

 5   factors that are contained in Title 18 United States Code,

 6   Section 3553, the Court commits the defendant to the custody of

 7   the United States Bureau of Prisons for a term of 144 months.

 8              Upon release from imprisonment he will be placed on

 9   supervised release for a term of three years.  He must pay the

10   mandatory special assessment of 100 dollars.  That's due

11   immediately.  The Court waives imposition of a fine, cost of

12   incarceration, cost of supervision due to Mr. Ford's lack of

13   financial resources.  Mandatory drug testing is ordered.

14              He must cooperate with the collection of a DNA sample

15   as directed by probation.  He must abide by the standard

16   conditions of our Court when he's placed on supervised release

17   and also the following special conditions.  He must submit to

18   substance abuse testing to determine if he's reverted to

19   illegal drug use and he must participate in a program of

20   substance abuse treatment, follow the rules of that program as

21   directed by probation.  The Court believes that counts one,

22   two, three, four and five and seven of the second-superseding

23   indictment are supposed to be dismissed?  Is that correct?

24              MS. FERNANDEZ-SILBER:  Yes, your Honor.  At this time

25   I would move to dismiss those counts.
```

1           MR. LONGSTREET:  No objection from the defense.

2           THE COURT:  All right.  So those counts are

3    dismissed.  Now is there any objection to the sentence?

4           MS. FERNANDEZ-SILBER:  No objection.

5           MR. LONGSTREET:  Respectfully, none from the defense.

6           THE COURT:  All right.  Mr. Ford, I'm going to tell

7    you about your appeal rights.  What I tell you now doesn't

8    change the fact that you've executed a Rule 11 Plea Agreement

9    that contains a waiver of your appeal rights, but if you do

10   appeal, you have 14 days to do so.  If you cannot afford an

11   attorney, I'll appoint one for you.  The clerk of court will

12   prepare the necessary appeal paper on your behalf upon your

13   request.

14          I'm going to order that the presentence investigation

15   report be corrected in accordance with my rulings here today

16   and that a corrected copy be furnished to the United States

17   Bureau of Prisons and the United States Sentencing Commission.

18   All other copies of the report will remain confidential in

19   accordance with the practice of our Court.  Is there anything

20   else?

21          MS. FERNANDEZ-SILBER:  Not for the government.

22          MR. LONGSTREET:  Nothing from the defense.  Thank

23   you.

24          THE COURT:  All right.  Then that concludes our

25   hearing for today.  My thanks to Ms. Sandusky and Mr. Yarbrough

1    for their assistance.

2            THE CLERK OF THE COURT:  Court's adjourned.

3            MR. LONGSTREET:  Oh, there is one issue.

4            THE COURT:  All right.  Go back on the record.

5            MR. LONGSTREET:  About my client's placement.  He

6    would like to be placed in the state of Michigan, umm, he would

7    like to be placed at Milan Correctional to be close to his

8    family, if that's possible.

9            THE COURT:  All right.  I have no objection to him

10   being lodged at Milan.  I don't obviously direct where he is

11   lodged, but I have no objection to him being lodged there.

12           MR. LONGSTREET:  Thank you.

13           THE COURT:  Anything else?

14           MR. LONGSTREET:  Nothing from the defense, thank you.

15           MS. FERNANDEZ-SILBER:  No, thank you, your Honor.

16           THE COURT:  Thank you.

17           THE CLERK OF THE COURT:  Court's adjourned.

18           (Hearing concluded at 3:33 p.m.)

19                       --    ---    --

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5

6

7           I, David B. Yarbrough, Official Court

8    Reporter, do hereby certify that the foregoing pages

9    comprise a true and accurate transcript of the

10   proceedings taken by me in this matter on Wednesday,

11   March 30th, 2022.

12

13

14

15

16   7/13/2022                /s/ David B. Yarbrough

17   Date                     David B. Yarbrough,
                              (CSR, RPR, FCRR, RMR)
18                            231 W. Lafayette Blvd.
                              Detroit, MI  48226
19

20

21

22

23

24

25